Good morning, and may it please the Court, Laura Weitzman on behalf of the petitioner, Rutilio Zaldana-Morales. I'd like to reserve three minutes for rebuttal. Okay. Fearful for his life, my client fled El Salvador within just days of receiving a death threat for identifying a Mara gang leader, El Paiso, in a police lineup as the person responsible for extorting his uncle's bus business. The fear that my client experienced that caused him to flee his homeland was reasonable, genuine, and understandable, according to the immigration judge. The death threat that Mr. Zaldana received and the need to flee his homeland as a result constitute past persecution under this Court's precedent, such as the Navas case and Mendoza-Pablo. That Mr. Zaldana, the persecution that he suffered was on account of a protected ground. Namely, his membership in a social group consisting of persons who report and assist in the investigation and prosecution of criminal gang activity. And so does that group that you've just identified exclude the uncle, or does it include the uncle? I think that they are not similarly situated in that the uncle did not identify the gang leader. I know, but I'm asking you, the group, I was curious how you're going to define the social group. So is he in or out? I think he would be in that group in that he reported criminal gang activity. But don't you have to define the group a little bit more narrowly in order to have him not be similarly situated? Well, we've identified it in the sense that it is not just the reporting of the crime, it's the witnessing, reporting, and assisting in the investigation and prosecution of that crime. My client was not just a victim of a crime who reported the crime. He affirmatively participated in the investigation and prosecution by participating in a police lineup. And it was only after the police lineup that he received the death threat. In fact, he made that testimony really clear in response to follow-up by the immigration judge that he was not threatened before he actually went down to the police station and identified the person. The individual, the anonymous caller who made the death threat, made it very clear the reason why he was being targeted. He said, the death threat is because we want to send a message to other bus drivers not to be informants and cooperate with police. So here there's no question as to whether the death threat, the past persecution, was on account of a protected ground. The person who delivered the death threat made clear that our client knew it was on account of that protected group. And yet, the Board of Immigration Appeals found that the immigration judge had correctly denied asylum in a two-paragraph decision that has no fewer than six separate factual and legal errors. And then continuing on, in just one conclusory sentence, denied my client's CAT claim, his claim under the Convention Against Torture, without any discussion whatsoever of country-conditioned evidence in the record, directly contrary to the regulations implementing CAT, which require that all evidence shall be considered in deciding a CAT claim. There was evidence in the record that people similarly situated to my client would be killed for assisting in identifying witnesses. In fact, in the record at page AR-162, the then-current country condition evidence showed the killing of three witnesses in three separate cases in a period of just 35 days. None of this evidence was considered or discussed by either the immigration judge or the Board of Immigration Appeals in summarily denying the CAT claim. And cases such as Cole and Camel Toss make clear that that kind of conclusory analysis, that kind of boilerplate legal standard in denying a CAT claim is not sufficient. I need to ask you about the country. You just mentioned the country reports that he submitted. I didn't see that he submitted any country reports. He did not. Neither did the government, notwithstanding their obligation under matter of SMJ. Yes, but it seems like he has more at stake here and that he would have identified, as most petitioners normally do, country reports and what in those country reports would support his case. He submitted some articles. Were you the attorney below? I was not, Your Honor. Okay, because I'm just wondering if there was any viable claim for ineffective assistance of counsel, given that his lawyer never produced any official country reports for the IJ to consider. So let me back up to your first question. There were no country condition reports submitted from the U.S. Department of State. There was country condition evidence in the form of two articles that were provided, and I was specifically referring to one of those two articles that were submitted by counsel below. I'm familiar with it. One of them was written in 2004. It was eight years before the merits hearing, and it has some pretty remarkable claims. For example, I think the article states that 80 percent of the cars driven in El Salvador were stolen in the United States and that illegal immigrants are responsible for most of the violent crime in America's cities. I know that you're probably limited by the lack of official country reports in the record, but is there anything else that we can look to? No, Your Honor. Your Honor, unfortunately this Court's precedent, the Embank-Fisher decision, precludes me from supplementing the record with probative evidence that would have been very useful to the agency below and should have been provided by both sides. As for the ineffective assistance of counsel, I think the record speaks for itself. The judge had to admonish counsel to stop texting during the merits hearing, ask the counsel to make a closing argument. Counsel initially refused to make a closing argument. There has not been a matter of Lozada claim filed. I was appointed by the Court pro bono, but certainly I believe that the quality of the counsel below affected the result. Unfortunately, there is evidence that I can't bring to the Court's attention at this stage of the proceeding. I do believe, though, that this evidence was admissible. It was admitted without objection by the government, so the Court was obligated to consider what evidence it did have, and this is highly probative evidence where it shows that similarly situated individuals are being killed with impunity at or around the same time that my client assisted in identifying El Paiso. That evidence was not considered by either the immigration judge or the board, and particularly with respect to the Catt claim, where this Court's precedent makes clear that country condition evidence, not necessarily country condition reports, but country condition evidence in general can sometimes be dispositive of one of those claims. Instead, what we have is a one-sentence summary denial that does not begin to comport with the type of detailed reasoned consideration that this Court requires. Let's assume that the one anonymous death threat was not enough to establish past persecution. Maybe you can argue. Let's hear your argument as to why you think, nonetheless, there was a reasonable fear of future persecution. I think that the evidence shows that what limited evidence there was of a country condition shows that individuals who are similarly situated are killed. I think that, you know, with the passage of time, here we sit today in 2016. These are events that occurred in 2006. I see I'm down to two minutes, but let me answer your question. I think that the evidence shows that the gangs retaliate against witnesses and that even if the actual death threat itself doesn't constitute past persecution, which I believe it does under Navas, that he would have a reasonable fear of persecution, having been specifically identified as somebody who cooperated with police in a police lineup. But I do think that a presumption of future persecution was triggered by the death threat, and that's not something that was considered either by the immigration judge or the board. But what's your most compelling evidence or best evidence that the government would not be willing or unable to control, I guess, the gang? I think, coming back to the same evidence I've cited, too, is the evidence on page 162. The articles? Is that the articles? That's correct, and it talks also about, and this is on page 162, it says that the MS-13 members execute their enemies in broad daylight. I'm familiar with the articles. You probably want to reserve the balance. Thank you. I appreciate that. Thank you. Good morning, and may it please the Court. Attorney Sabatino F. Leo, on behalf of the United States Attorney General. I think the critical issue here, Your Honors, before pivoting on to the merits of this petition, is really with regard to the exhaustion issue that was raised in the brief below. I'm not so much persuaded by the exhaustion issue. Maybe perhaps you can answer a question I have regarding what I've been asking the opposing counsel about, and that's the country reports or country conditions. Do you not have an obligation to produce any country condition reports? Your Honor, pursuant to statute and regulation, it is the burden of the alien to produce this information. Now, although this Court has recognized that the agency also has the responsibility to provide country conditions evidence, there has simply been nothing presented to the agency below with regard to the convention against, specifically with regard to the convention against torture claim, that individuals be tortured by or with the acquiescence of the government. Well, but you represent the Department of Justice, so you want justice done in every case, I know. And so was there any country report that you could have given that would have been helpful? I mean, I'm just curious, because normally, typically, the government does submit. And you are correct. And as an officer of this Court and a member of the Department of Justice, I believe that justice should be done. And in this particular case, there is simply the evidence that was presented showed that – I know that was presented. What did you find? Unfortunately – Country report review. Unfortunately, with regard to my own independent review following what was presented, and, again, we are limited to the record, but I will answer Your Honor's question. Specifically with regard to general conditions of strife and criminal conditions in El Salvador as a result of MS-13 and Mara Salvatruch's MS-13 gangs, what I can say, Your Honor, as Your Honor asked the question, although it is not in the record, is that the government has continued to do what it is able to do with regard to stopping or preventing or ensuring that individuals in El Salvador are protected. And I think if you look over the course of many years from the founding, I think, in the 1990s with regard to MS-13, and I know a lot of it translates back to the United States, up to and including the date of when this hearing was held, that the government has continued to take strides in order to prevent that criminal strife from occurring. I'm just curious why you wouldn't have just submitted that below so that could get fair consideration. I didn't know if the government was hiding something, what was going on there. Your Honor, I was not privy to the proceedings below, as Your Honor is well aware. I will say that I do not believe that the government is hiding anything just based upon my knowledge of El Salvador and these particular cases with regard to the strife, et cetera, and the conditions. Let me ask you another question because it seems like Mr. Zaldana Morales, I mean, who was the bus driver down in El Salvador with his uncle, I think, it seems like he would be a candidate for prosecutorial discretion. Is there any consideration for that? Your Honor, there has been consideration with regard to prosecutorial discretion, administrative closure, and whatever discretionary remedies are available to the alien in this regard. And it would be our position at this time that this particular petitioner does not warrant it. And I guess what I would add to that commentary is that that, pursuant to Heckler v. Cheney and INA 242G, is really a discretionary determination made by the executive branch and really not within the confines of the record here. But I do understand the question and the concern with regard to this particular alien, and I think it's important to, I guess, recognize. Well, this particular alien and then the fact that we have so very little to go on with respect to the country reports and to determine whether the Salvadoran government is able or willing to control sufficiently MS-13. So that's just my, on top of what I see based here on the record regarding the petitioner, it just further sort of begs the question. And I do understand your concern, but I would add that in the record it is very clear the petitioner testified the same with regard to what the government went ahead and did with regard to MS-13 in this particular case. Not only did they apprehend the individual involved, El Pasayero, I believe his name was. El Pasayero. El Payaso. Payaso. Payaso. I speak Italian, not Spanish, so I apologize. With regard to that particular individual, called him in, detained. There was a line or at least an identification of that individual, and that individual was detained for a subsequent amount of time following that initial ID and witnessing. And so that, I think, in and of itself presents that there is clear evidence that the government has been willing to protect or at least making strides against MS-13. I think it's also important to note is that with regard to Judge Watford's question with regard to the uncle, is that the uncle also participated in this particular lineup, although it wasn't the individual that actually pointed out this MS-13 gang member, and he has continued to reside in El Salvador effectively without incident. There's been no indication that the uncle has received any death threats. There's been no indication that the uncle has received any death threats. I think if you look at the social group involved here a little bit more narrowly, he's just not in it. So it's not, I mean, I don't think he's the right person to compare to our petitioner. And I agree, Your Honor, and I think what we're saying is, is there evidence in the record with regard to the government's ability to protect, so to speak? No, no, because he's not similarly situated. So he didn't ID, he didn't finger the gang member, and we know from the petitioner's credible testimony here about the threat that he received, it was specifically because he was the one who had identified the gang member, not just because he had shown up at the police station. And I understand and I concur with your assessment of the evidence, Your Honor, but I think what is also important, and I think what the agency actually did a good job here with regard to this case, is with regard to a particular social group and whether there's an on- It didn't have the benefit of our decision in Henriquez-Rivas, right? So, I mean, we have a bunch of these cases that are very similar on the facts that we just remand back to the BIA to reconsider, and I guess I don't understand why we wouldn't do that here. Well, in this particular situation, and I agree this predated Henriquez, although the court did discuss the immigration judge in this particular case did make the finding that even if this individual was part of a particular social group of witnesses who cooperated in investigations against gang violence in El Salvador, that even if that was the case, that the harm would not be on account of a protected judge. That's just wrong, right? I mean, we know from the nature of the threat that was- I don't know how you could have better evidence of nexus here than the threat that was provided. And I understand your concern, Your Honor, and I think what the situation is is really there was no rebuttable presumption here and there was no finding of past persecution. They went to the well-founded fear of future persecution. Now, based upon the evidence of the record with regard to, and again, I think you disagree with regard to the uncle being there and not being subject to any harm, and as far as the actions that were taken by the authorities at that particular time, that that in and of itself was not sufficient evidence to demonstrate the nexus, the nexus with regard to this particular social group and it being on account of his being a witness, his cooperation with authorities, et cetera. I want to make sure, because you think that the article at 162, it's just not, I don't know what, it's not credible, it's not we shouldn't place any weight on what's said there, because it does seem to say that witnesses who come forward and try to testify do get murdered by this gang. Oh, I think that that evidence, I mean, it was not rebutted by the government below, and I would add, and I think that that... And it's just true, right? I mean, this gang is notorious for taking out people who try to cooperate against, I mean, even here, let alone in El Salvador. So I guess I'm not sure why isn't what we've got here enough to at least warn a remand, because I really do think the nexus fallback discussion was just wrong, I mean, could not be more wrong. So I guess, why isn't it enough, then, to look at that article and say, well, there's at least something here that suggests that this fear that he's got is potentially reasonable? Well, again, based upon the evidence that was presented by the alien in this particular case, and whether or not that fear is well-founded, based upon what he actually presented with regard to that in this particular situation, the individual that was responsible for this alleged persecution or potential future persecution was actually detained by authorities in El Salvador, as well as his uncle. But this isn't, I mean, this isn't one of those cases where the threat that he's receiving is a very personal... Like, as long as the person he identified has been neutralized, there's no danger. This is, I mean, he's kind of snitched on a gang that has many members, as we know, and so the fact that one person is detained or, I mean, he's not detained anymore, that doesn't seem to me to be all that compelling. And I understand your concern, and I think I would invite the attention of this Court with regard to really what are we looking at here is whether or not substantial evidence supports the agency's determination. Does the record compel a contrary conclusion? Yeah, so that's why I'm trying to figure out your position, because I look at AR-162, and there's a paragraph there in this, I don't know what this article is, it's like it's on the Internet or something, so I'm just wondering if you're going to tell us that we shouldn't put any weight on it, but it does seem to say that folks that are in the petitioner's position have been murdered, which suggests, number one, that the threat that he received isn't an idle threat, and number two, that the government obviously wasn't able to prevent it. Yes, Your Honor, if I am correct, that article also discusses sort of the, at least my understanding, and I may be conflating articles here, as far as the ability for police officers at least trying to make strides into preventing this criminal strife and criminal activity throughout El Salvador, and in my opinion, this is one example of the actual strides that El Salvador and authorities are actually doing, and that is we detain this individual, we took this individual in, we detain this individual for a significant, for at least an amount of time with regard to these threats that you're, So you rely on the articles too, I mean, so you're not challenging the articles. I'm not here to, they weren't objected to below, so I'm not here as an officer of this court to say anything otherwise that we're somehow saying those articles were created or misstating what the conditions were at that particular time at that article, but what I am, what I can honestly say is whether or not this particular record and the facts and the burden being on the petitioner compels a contrary conclusion to what the agency found, and that there is no well-founded fear of persecution, that even as a member of this particular social group, that any future persecution would not, is not on account of membership in this particular social group. Okay, thank you. Thank you, Your Honors. Briefly, to talk, you asked what is this article, I did a little Googling myself in preparation for today, and it's been cited in books such as Introduction to Criminal Investigation Procedures, cited by Virginia College Journal of Law of Justice in winter 2010, so this is not something that was just, it's a very credible source, and again, it was admitted without objection by the government. How does the fact it's cited somewhere make it a credible source? Well, it appears in a number of journals. You mentioned two. Yeah, I didn't print the whole list because it's outside the record. But this was evidence that was submitted, not objected to by the government, should have been considered, was not considered by the agency, and that evidence is extremely probative of how similarly situated individuals are treated. Also, I want to point out that El Paiso was not prosecuted as the Board of Immigration stated in its decision. In fact, I mentioned that there were six separate factual errors in its decision. That's just one of them. There was no evidence of prosecution. In fact, the fact that he was arrested and then released only makes it more dangerous for my client than had he never been arrested. So it's the arrest itself which creates and heightens a danger to my client. And just one further point. Not only was Henriquez-Rivas decided after the Board's decision, but the Madrigal decision, which I think is really squarely on point here, was also decided in 2013. The Board did not have the benefit of that decision either. Thank you very much.
judges: Murguia, Watford, Vanaskie